Case 4:13-cv-02892   Document 34   Filed in TXSD on 01/15/16   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 15, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KENNETH EARL DAVIS, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:13-CV-2892 |
| § | |
| KROGER COMPANY, § | |
| § | |
| Defendant. § | |

## ORDER AND OPINION

Pending before the Court are Defendant Kroger Texas L.P.'s ("Kroger's") Motion for Summary Judgment (Document No. 27), Plaintiff's Response in Opposition (Document No. 30), and Defendant's Reply thereto (Document No. 31). After considering these documents, the facts in the record, and the applicable law, the Court concludes that Defendant's Motion for Summary Judgment (Document No. 27) is granted.

## Background

Plaintiff is a forty-seven year old African American man who began working as a grocery clerk/night stocker for Defendant Kroger in November 2009 (Document No. 22 at 2). His duties included: "(1) unloading trucks and removing and sorting merchandise; (2) stocking; (3) customer service; (4) equipment use; (5) loading salvage; and (6) stacking pallets" (Document No. 27 at 3)(*citing* Document No. 27-2 at 2; Document No. 27-3 at 128-132). Plaintiff also had "additional duties," which included "conducting inventory, often times [scanning back stock] with a handheld scanner." *Id*. (*citing* Document No. 27-2 at 2).

Plaintiff was terminated from his position in October 2011 (Document No. 22 at 7; Document No. 27 at 5-6). The two parties dispute the reason for Plaintiff's termination. Plaintiff

alleges that:

> On a night in mid-September of 2011, five night stockers, Cedric Johnson, Anthony Morrow, Jarvis McCoteheon, Chris Doughtie and Tim Britt, failed to finish stocking their aisles in time. Johnson, McCoteheon and Morrow are African American. Doughtie and Britt are White. Despite the fact that all five employees were equally at fault in failing to complete the stocking before the morning shift began, Grocery Manager Alex Johnson brought only the three African American employees up to Store Manager Bealinda Besa to be disciplined. Neither Doughtie nor Britt were disciplined or even scolded for failing to complete their work by the end of their assigned shift. […] In late September, 2011, when Plaintiff was alone with Alex Johnson, he asked Alex Johnson why only the African American night stockers had been disciplined. In asking his question, Plaintiff spoke in a calm, rational and professional manner. Alex became furious at being asked the question, denied being racist but also failed to answer the question.

(Document No. 22 at 5-6). Plaintiff alleges that, in retaliation for this conversation, his hours were reduced, and he was suspended for failing to scan back stock, despite the fact that he did not have a password to do so. *Id*. at 6.

Defendant alleges that Plaintiff was terminated for "refusing to scan his back stock" (Document No. 27 at 5). Defendant states that in mid-2011 Kroger began requiring all night clerks to scan their back stock and that Plaintiff was aware of this, but continuously refused to scan his back stock. *Id*. at 5-6. Johnson reported this behavior to Store Manager Bealinda Besa, who terminated Plaintiff's employment, after consulting with Human Resources, "in accordance with Kroger's policies calling for immediate discharge because of an employee's refusal to accept a job assignment." *Id*. at 6 (*citing* Document Nos. 27-5, 27-8, 27-9).

Plaintiff alleges that Defendant's actions "resulting in termination of the Plaintiff constitute illegal retaliation for having engaged in conduct protected by Title VII of the Civil Right Act of 1964, of 42 U.S.C. § 2000(e). Defendant Kroger's actions in reducing Plaintiff's hours and later firing the Plaintiff caused the Plaintiff to suffer all of the harm described above" (Document No. 22 at 8). The harm alleged by Plaintiff includes psychological and physical harm, as well as the loss of his job, employment income and benefits, reputational harm, and

personal costs including attorney's fees. *Id*.

**Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 713 (5th Cir. 1994). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Liberty Lobby*, 477 U.S. at 247-48. "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.*, *quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), and *Liberty Lobby*, 477 U.S. at 249-50.

**Substantive Law**

**Exhaustion of Remedies**

Plaintiffs claiming employment discrimination must exhaust administrative remedies by filing a timely charge with the EEOC and receiving a right-to-sue notice. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Failure to exhaust administrative remedies "is not a procedural 'gotcha' issue," but "a mainstay of proper enforcement of Title VII remedies." *McClain v. Lufkin Industries, Inc.*, 519 F.3d 364, 272 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 198 (2008). A private plaintiff must exhaust her administrative remedies before seeking relief by filing an administrative charge with the EEOC. 42 U.S.C. § 2000e-(5)(b); *id.*

The filing of an administrative complaint about a claim under Title VII is a jurisdictional prerequisite. *Tolbert v. U.S.*, 916 F.2d 245, 247 (5th Cir. 1990)(Exhaustion of administrative remedies in a Title VII suit is a prerequisite to federal subject matter jurisdiction.); *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997), *cert. denied*, 523 U.S. 1136 (1998); *McCray v. DIP Indus., Inc.*, 942 F. Supp. 288, 294 (E.D. Tex. 1996)(The court's review is restricted to "'those grounds of a Title VII complaint that were raised in the administrative process.'"), *quoting Anderson v. Lewis Rail Serv. Co.*, 868 F.2d 774, 775 (5th Cir. 1989).

**Retaliation**

To assert a claim of retaliation under Title VII, a plaintiff with only circumstantial evidence must satisfy the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First the plaintiff must make a *prima facie* case of retaliation that meets three elements: (1) the employee engaged in an activity that is protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria*

*County, Tex. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004), *cited for that proposition in Cooper v. Dallas Police Assoc.*, 278 Fed. Appx. 318, 320 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1912 (2009). *See also McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

The relevant portion of the statute defines "protected activity" as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a)(the "opposition clause"). An adverse employment action "must be an *ultimate employment decision.* Ultimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating." *Brazoria Cty.*, 391 F.3d at 692 (internal citations and quotations omitted).

"Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. v. Texas Southwest Med. Center v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2533 (2013). *In accord*, *Finnie v. Lee County, Miss.*, 541 Fed. Appx. 368, 371-72 (5th Cir. 2013).

Noting that "the existence of a causal link between a protected activity and an adverse employment action is a 'highly fact specific' and difficult question," the Fifth Circuit has identified factors supporting causation including "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Smith v. Xerox Corp.*, 371 Fed. Appx. 514, 520 (5th Cir. 2010).

If the plaintiff succeeds in making a *prima facie* case of retaliation, a presumption of discrimination arises, and the burden shifts to the defendant employer, to provide a legitimate,

nonretaliatory reason for the adverse employment action. *Hockman v. Westward Communications LLC*, 407 F.3d 317, 330 (5th Cir. 2004), *cited for that proposition in Cooper*, 278 Fed. Appx. at 320. If the employer succeeds, under the *McDonnell Douglas* framework the presumption of discrimination falls away and the plaintiff must show that the employer's articulated reason for its action is merely a pretext for retaliation. *Cooper*, 278 Fed. Appx. at 320, *citing McDonnell Douglas*, 411 U.S. at 804. The plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer. *McCoy*, 492 F.3d at 557. The plaintiff can show pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003), *quoting Reeves*, 530 U.S. at 143. "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and thereby preclude summary judgment. *Reeves*, 530 U.S. at 135.

## Discussion

**Exhaustion of Remedies**

Defendant first argues that "Plaintiff's claim for retaliation based on a reduction in work hours [as opposed to termination] is barred for failure to exhaust administrative remedies," because Plaintiff did not include it in his EEOC claim (Document No. 27 at 9)(*citing Taylor v. Texas S. Univ*, No. 4:12-CV-01975, 2013 WL 5410073, at *5 (S.D. Tex. Sept. 25, 2013) *aff'd*, 569 F. App'x 193 (5th Cir. 2014)("Plaintiff's 2011 demotion and 2012 termination were quite clearly separate and distinct acts. As such, each required its own EEOC Charge.")). In Plaintiff's allegations to the EEOC he stated that: "I had informed Alex Johnson, Grocery Manager that I felt it was discriminatory for him to reprimand Black employees for alleged infractions White

employees committed with impunity. On October 13, 2011, Mr. Johnson ordered me to leave the workplace for allegedly refusing to complete a task." *Id*. (*citing* Document No. 27-11). This does not refer to any reduction in hours, and Plaintiff himself admitted this in his deposition. *Id*. (*citing* Document No. 27-3 at 223:22 – 224:13). Therefore the Court does not have jurisdiction over this claim, and it is dismissed.[1] *Tolbert*, 916 F.2d at 247.

**Plaintiff's Termination Claim**

Plaintiff's claim of wrongful termination remains. The Court first must consider whether Plaintiff has made a *prima facie* case of retaliation, demonstrating that (1) he engaged in an activity that is protected by Title VII, (2) Kroger took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria Cty.*, 391 F.3d at 692.

*Protected Activity*

Plaintiff alleges that he engaged in protected activity when he "complained of racially discriminatory employment practices" (Document No. 22 at 8). Neither party disputes that Plaintiff's action would be considered protected activity; however Kroger argues that this alleged incident never occurred (Document No. 27 at 13 n.6).

Plaintiff testified in his deposition that three black Kroger employees (Cedric, Anthony and Jarvis) approached him, because Johnson formally reprimanded them for failing to finish a task on time (Document No. 30-2 at 154). These three employees told Plaintiff that two white employees (Chris and Tim) also did not finish on time, but were not reprimanded by Johnson. *Id*. Plaintiff agreed to have a conversation with Johnson about this, during which Plaintiff alleges that Johnson became angry and stated that he was not a racist. *Id*. at 154-155. Shortly thereafter,

---

[1] Defendant also correctly states in its Reply that Plaintiff conceded this issue, because he did not respond to Kroger's argument in his Response (Document No. 31 at 3-4)(*citing Lexington Ins. Co. v. ACE Am. Ins. Co.*, No. CIV.A. H-12-0531, 2014 WL 3406512, at *22 (S.D. Tex. July 7, 2014)).

Plaintiff alleges that he was terminated in retaliation for his conversation with Johnson. *Id*. at 155-156. However, Plaintiff does not provide any evidence demonstrating that this event occurred, other than his own testimony, despite the fact that at least three other Kroger employees were involved in the incident.

In response to Plaintiff's claims, Defendant cites Johnson's deposition testimony that he did not recall disciplining those three employees in September 2011, and that the alleged conversation with Davis did not happen (Document No. 27-5 at 34-44). Specifically, Johnson was sure that he "would have remembered having a conversation if somebody is accusing me of being racist." *Id*. at 43-44. In addition to Johnson's testimony, Defendant also includes a declaration by Besa, who reviewed the relevant employee files (Document No. 27-4). Besa states that Cedric, Anthony, and Jarvis were not disciplined for such an infraction in September 2011. *Id*. at 4. Furthermore, "two of the men, Cedric Johnson and Anthony Morrow, along with a Caucasian employee, Chris Doughtie, were all given a Significant Incident Reminder (on the same day) in August 2011 for failing to complete their stocking duties in a timely manner." *Id*.; (Document No. 27-14 at 2-4). This testimony, combined with the disciplinary files of the employees involved, demonstrates that no reasonable jury could conclude that this incident occurred as Plaintiff describes. Plaintiff's self-serving testimony, alone, does not create a genuine dispute of material fact on this issue. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)("[U]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.")(citation omitted).

Presumably in response to the deposition testimony and contradictory disciplinary records, Plaintiff proffers a slightly different account of the incident in his Response:

> At some time around August 22 of 2011, five night stockers, Cedric Johnson, Anthony Morrow, Jarvis McCoteheon, Chris Doughtie and Tim Britt, failed to finish stocking their aisles in time. Johnson, McCoteheon and Morrow are African American. Doughtie and Britt are White. Despite the fact that all five employees were equally at fault in failing to complete the stocking before the morning shift began, Alex Johnson took two[2] of the African American stockers, Morrow and Johnson, upstairs to be disciplined and neither of the White stockers. Ultimately, Store Manager Besa intervened and issued written discipline to Morrow, Johnson, and one of the White stockers, Chris Doughtie.
> Nevertheless, the African American stockers were concerned that Johnson had only taken the two African American stockers upstairs and approached Davis about the apparent racial disparity in treatment of the night stockers and the Plaintiff agreed to talk to Alex Johnson and inquire about the reason behind the apparent disparity in treatment.
> Plaintiff then met with Alex Johnson and asked Johnson why only Johnson and Morrow were taken upstairs and not the White stockers. Johnson responded with anger, denied being racist but also failed to answer the question.

(Document No. 30 at 5-6)(*citing* Document No. 30-2). Plaintiff cites his own deposition testimony for these allegations, but mischaracterizes portions of his own testimony and alleges that Besa "intervened" with no supporting evidence. In fact, allegations that Besa "intervened" contradict Besa's testimony that such an event was never brought to her attention (Document No. 27-6 at 41). As above, Plaintiff's unsupported allegations do not create a genuine issue of material fact.

*Causation*

Plaintiff also fails to demonstrate that this alleged incident was the "but-for" cause of his termination under the third prong.[3] As described above, the Fifth Circuit uses three factors to weigh causation: "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Smith*, 371 Fed. Appx. at 520.

---

[2] Plaintiff's deposition testimony actually alleges that Johnson disciplined all three African American employees (Document No. 30-2 at 154).
[3] There is no dispute that Kroger's termination of Plaintiff constituted an adverse employment action, fulfilling the second prong. *Brazoria Cty.*, 391 F.3d at 692.

Johnson's testimony is inconsistent as to Plaintiff's record as an employee at Kroger. At one point in his deposition Johnson stated that, while he supervised Davis in 2011, Davis was a "good employee," who was "hardworking" and had a good attitude "most of the time" (Document No. 27-5 at 46-8). Johnson also stated that he did not remember disciplining Plaintiff at any time other than his suspension for failing to scan the back stock. *Id*. at 50. However, later in this deposition Johnson admitted that he had "verbally counsel[ed]" Plaintiff on his attitude. *Id*. at 55. Johnson described the issue as follows: "it was basically him letting me know that he's the one in charge and he's going to do it his way, as he's flashing money in front of me, telling me, this is why I'm in charge." *Id*. Given these inconsistencies, Johnson's testimony does not illuminate Plaintiff's employee record.

Besa's testimony suggests that Plaintiff's work performance was inconsistent, and that at times "Kenneth would not finish the job, and the rest of the stock crew would follow his lead. If Kenneth didn't feel like finishing the workload, then the store would not get completely stocked or conditioned for the customer" (Document No. 27-6 at 16). The only employee record of Davis in evidence supports this, stating that "the days he decides to work, he gets a tremendous amount of work accomplished. Sadly, those days are few and far between" (Document No. 27-13 at 2). Despite portions of Johnson's testimony which praise Plaintiff, the overall evidence on this factor weighs against Plaintiff.

The evidence provided by Defendant shows that Kroger followed its typical policies in terminating Plaintiff. Kroger's Equal Opportunity Policy states that "refusal of a job assignment is cause for immediate discharge," as does its Union contract (Document No. 27-8 at 3; Document No. 27-9 at 5). After Plaintiff refused to scan the back stock, Besa filled out a Constructive Advice Record (Document No. 27-7), explaining the incident. This document was

then submitted to Human Resources, who told Besa to terminate the Plaintiff's employment (Document No. 27-6 at 30). This all demonstrates that Plaintiff was terminated in accordance with Kroger's established policies. Also, the fact that Human Resources made the decision to terminate Plaintiff suggests that the decision could not have been retaliatory, as Plaintiff has not alleged that he informed Human Resources of his protected activity.

Plaintiff alleges that his discussion with Johnson occurred around August or September of 2011 (Document No. 30 at 5; Document No. 22 at 5). It is undisputed that his termination occurred shortly after his suspension on October 14, 2011 (Document No. 27-4 at 5; Document No. 27-5 at 23; Document No. 27-6 at 28-31). Assuming facts in the light most favorable to Plaintiff, his termination could have occurred as quickly as three to four weeks after the alleged incident. However, as described above, the Fifth Circuit has held that "temporal proximity alone is insufficient to prove but for causation." *Strong v. University Healthcare System, LLC*, 482 F.3d 802, 808 (5th Cir. 2007). In *U.S. ex rel. King v. Solvay S.A.*, Judge Miller explains that prior cases relying heavily on temporal proximity also have included "significant evidence of pretext." No. CIV.A. H-06-2662, 2015 WL 4256402, at *11 (S.D. Tex. July 14, 2015).

Plaintiff alleges that "Kroger's proffered reason for the termination is a pretext for retaliation," as Plaintiff's refusal to scan back stock "defies logic and common sense and is most at odds with the rest of the evidence in the record" (Document No. 30 at 12). Plaintiff states that "the back stock was an easy task, taking no more than 10 minutes out of an average 8 hour shift" and that "Davis was simply not the kind of employee who misbehaves at work or who would tell his boss 'no' when given a direct order." *Id*. Furthermore, Plaintiff states that, on October 13, 2011, Davis merely told Johnson "that he was unable to scan the back stock because he had not been set up with a login name of password or given computer access." *Id*. at 13.

Plaintiff may be correct that it "defies logic" that he would refuse to complete a 10-minute task; however, the evidence demonstrates that Plaintiff did just that. Johnson testified that Plaintiff refused to scan the back stock (Document No. 27-5 at 24), and Plaintiff admitted that he did not do so (Document No. 27-3 at 236). Even if Plaintiff did engage in the alleged protected activity, he would not be insulated from disciplinary action for his refusal of a job assignment. *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1051 (8th Cir. 2007)("[T]he anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.")(citation omitted).

Plaintiff also argues that he did not refuse to scan the back stock, but that he was not able to do so, because he did not have a password (Document No. 27-3 at 155-157). Plaintiff states that Johnson asked him to scan the back stock, but never showed him how to do it or provided him with a password. *Id*. at 155. This is disputed by Johnson, who testified that "every time he told me, I need a password," Johnson would offer to set him up with a password right away, but Plaintiff refused each time (Document No. 27-5 at 31). Plaintiff's argument that he was unable to scan the back stock also fails because Plaintiff admitted that he had other avenues of obtaining a password, such as going to another manager, or borrowing another employee's password (Document No. 27-3 at 159-162). Despite these alternate options, Plaintiff never scanned his back stock. *Id*. at 157. The fact that Plaintiff was asked repeatedly to scan the back stock, and failed to do so, demonstrates that Kroger's proffered explanation for Plaintiff's termination is not pretext.

Plaintiff's employee record at Kroger also does not demonstrate pretext. First, there is a substantial amount of evidence that Plaintiff was not an exemplary employee at Kroger. Second, evidence of an exemplary record, coupled with temporal proximity, is not sufficient to

12 / 13

demonstrate that Plaintiff was terminated in retaliation for protected activity. *See Solvay*, 2015 WL 4256402 at *11 (The Court granted summary judgment for the defendant employer, holding that, "[t]he temporal proximity between the protected activity and terminations coupled with the fact that Relators had previously received positive performance reviews, commendations, and emails, is insufficient evidence for a reasonable juror to conclude that Relators would not have been fired but for engaging in protected activity.").

Each of these three factors weighs against Plaintiff's claim that he was fired as a result of engaging in protected activity; thus Plaintiff is unable to demonstrate causation, as required under the third prong.[4]

**Conclusion**

Plaintiff fails to support a *prima facie* case of retaliation, because he is unable to demonstrate two of the required prongs: that he engaged in protected activity, and that such protected activity was the reason Kroger terminated his employment. Therefore summary judgment is appropriate. The Court hereby

ORDERS that Defendant's Motion for Summary Judgment (Document No. 27) is GRANTED and Plaintiff's claims are DISMISSED.

SIGNED at Houston, Texas, this 15th day of January, 2016.

                                                                    _____
                                                                    MELINDA HARMON
                                                                    UNITED STATES DISTRICT JUDGE

---

[4] Even if Plaintiff had established a *prima facie* case of retaliation, he would not be able to rebut the nondiscriminatory reason asserted by Kroger. *McCoy*, 492 F.3d at 557. As described above, the proffered explanation for Plaintiff's termination was not merely pretext. *Cooper*, 278 Fed. Appx. at 320.